UNITED STATES, Appellee,

v.

Ty W. JEFFERSON, Private, U. S. Army, Appellant.

No. 39,591.
CM 438956.

U. S. Court of Military Appeals.

April 19, 1982.

For Appellant: *Captain Joseph A. Russelburg* (argued); *Colonel Edward S. Adamkewicz, Jr., Lieutenant Colonel John F. Lymburner, Major Raymond C. Ruppert, Major Robert D. Ganstine* (on brief).

For Appellee: *Captain Rex T. Bragaw, III* (argued); *Colonel R. R. Boller, Major John T. Edwards, Major Douglas P. Franklin* (on brief); *Major Ted B. Borek.*

## Opinion of the Court

FLETCHER, Judge:

We are called upon in the case *sub judice*[1] to rule on the following issues:

### Granted Issue:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY DENYING A DEFENSE REQUEST FOR PRIVATE RONNIE DAVIS AS A MATERIAL WITNESS ON THE MERITS.

### Specified Issue:

WHETHER THE ACCUSED WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN THE PREPARATION FOR AND TRIAL OF THE CHARGES.

We are convinced that appellant received effective assistance of counsel in the preparation and trial of this case; moreover, based on the entire record of trial, we conclude that denial of the material witness Davis to the defense was not reversible error.

---

1. Contrary to his pleas, appellant was convicted by a general court-martial of rape, forcible sodomy, assault with a means likely to produce grievous bodily harm, communicating insulting language to a female, and two specifications of communicating a threat, in violation of Articles 120, 125, 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, 928 and 934, respectively. The sentence included a dishonorable discharge, confinement at hard labor for 20 years, total forfeitures and reduction to the grade of E–1. The convening authority approved the sentence except for confinement in excess of 19 years. The United States Army

## A

During the evening of May 26, 1979, appellant attended a barracks party which also was attended by the prosecutrix in this case. According to the alleged victim's testimony, after this party appellant forced her into a barracks laundry room, locked the door and compelled her to engage in sexual intercourse as well as oral and anal sodomy. The prosecutrix also testified that she screamed several times during the course of the attack. Appellant testified that she consented to participate in these sexual acts.

An investigation by Criminal Investigation Division (CID) agents revealed four potential witnesses who lived in rooms near the scene of the crime. Privates Davis and Griffin lived in the room across from the laundry room. Privates Van Iten and Orr lived in the room next to the laundry room.

On September 24, 1979, an Article 39(a),[2] session was held. At that time, civilian defense counsel, Mr. Watkins, moved for a severance of the charges, seeking that only the offenses involving one victim be tried at each trial.[3] This motion was denied. Defense counsel then moved for a continuance. Mr. Watkins explained that he had asked for Ronnie Davis to be a witness, and thought that the request had been given to the trial counsel the Tuesday or Wednesday before trial. Trial counsel responded that "Ronnie Davis was requested on Friday afternoon at three-thirty." His rank, social security number, and location were not furnished. An attempt to locate Davis at Fort Gordon was unsuccessful. The other military wit-

Court of Military Review held that the findings on both threat specifications were erroneous, set them aside, and dismissed the Charge. The remaining findings of guilty and the approved sentence were affirmed.

2. UCMJ, 10 U.S.C. § 839(a).

3. Three specifications with which appellant was charged and convicted at this court-martial concerned a second woman soldier who attended the same barracks party as the prosecutrix and offenses which occurred prior to those involving the prosecutrix.

nesses requested by the defense counsel at the same time were available. Mr. Watkins explained that Davis resided in the room next to the laundry room where the victim was raped, and that Davis was awake the entire night and heard no screams from the laundry room. Mr. Watkins had not, however, spoken with Davis, but rather, had seen a CID agent's summary of a conversation that the agent earlier had with Davis. This report was attached to the copy of the Article 32[4] investigation report provided to the defense. Davis, however, never testified at the Article 32 investigation. Mr. Watkins explained that he had not asked for Davis earlier because he believed Davis would be present at the trial.

The military judge stated that the defense "had adequate opportunity to gather . . . [their] witnesses" and determine what would be the testimony of those witnesses. He also found that the requested witness' testimony was cumulative with that of others who were present to testify. The military judge then denied the motion for the continuance to obtain the witness.

During the trial, the Government attempted to show that the prosecutrix had not consented to the charged sexual conduct. The prosecutrix testified to her lack of consent. Another female testified to conduct of appellant immediately preceding his encounter with the prosecutrix. Two witnesses provided evidence of fresh complaint made by the prosecutrix. Various objects of physical evidence including torn or ripped clothing were admitted into evidence.

The above-mentioned Private Griffin, the roommate of Private Davis, was called by the defense. He testified that he heard no screams that night but went to sleep at about 2:30 in the morning. Private Orr was also called by the defense. He testified that he was drunk and asleep on the night in question and that his roommate, Private Van Iten, was in Florida during this time. Private Davis did not testify at the trial.

We have examined the record of trial and all exhibits attached thereto, including the report of the Article 32 investigation. We cannot locate any summary report of CID Agent Blake's conversation with Private Davis. *Cf. United States v. Lucas,* 5 M.J. 167, 173 (C.M.A.1978). Nevertheless, defense counsel on the record and based on this summary report clearly indicated what he expected this witness' testimony would be. The Government did not specifically challenge the legitimacy of this report but pointed out that it was not a sworn statement nor had defense counsel personally interviewed the witness. Accordingly, we are not precluded as a matter of law from assessing the materiality of this witness' expected testimony. *Cf. id.* at 172.

Defense counsel averred that Davis would testify that he was awake in his room during the time when the alleged sexual assaults occurred in a laundry room across the hall. Counsel also asserted that this witness would testify that he did not hear screams or any noise during this period. Accordingly, it was incumbent upon the military judge to decide whether this expected testimony was "material." In other words, would this testimony "negate the Government's evidence or . . . support the defense?" *United States v. Iturralde-Aponte,* 1 M.J. 196, 198 (C.M.A.1975).

The military judge knew from the face of the charges and specifications that the Government had the burden to prove beyond a reasonable doubt that the alleged victim had not consented to certain sexual acts with appellant. *See* Article 120(a), Uniform Code of Military Justice, 10 U.S.C. § 920(a). Moreover, from an earlier Article 39(a) session, the military judge knew that appellant contended the victim consented to these sexual activities. It was clear that testimony from a third party witness in a position to hear such screams that he heard none could support the defense's assertion of consent and weaken the government's case. *United States v. Lucas, supra.*

The Government nonetheless asserted that this testimony was cumulative. *See*

---

4. UCMJ, 10 U.S.C. § 832.

*United States v. Williams,* 3 M.J. 239 (C.M. A.1977). It pointed out that Private Griffin, the roommate of Private Davis, was available to testify at trial and would testify that he heard no screams up until the time he went to sleep at 2:30 in the morning. Defense counsel pointed out that the witness Davis was up all night. In view of the government's admission that the incident did not take place until 0300 hours, the witness Davis' testimony was not cumulative. The military judge erred in not ordering his production at trial. *United States v. Carpenter,* 1 M.J. 384 (C.M.A.1976).

 The final question we must address is whether appellant's conviction must be reversed by this Court because the defense was denied the testimony of Private Davis. *See United States v. Lucas, supra* at 171–72. We must decide whether "evidence in the record of trial demonstrates beyond a reasonable doubt that the unadmitted testimony would not have tipped the balance in favor of the accused and the evidence of guilt is so strong as to show no reasonable possibility of prejudice." *Id.* at 172–73 (footnote omitted). *See United States v. Hampton,* 7 M.J. 284 (C.M.A.1979); Westen, *Compulsory Process II,* 74 Mich.L. Rev. 192–234 (1975). We have conducted such an examination of the record in the present case and conclude no reasonable possibility of prejudice existed in this case.

In this respect, we note that the central issue in this case was consent. Whether the prosecutrix screamed or did not scream was a secondary issue to be considered by the court members in reaching their conclusion on the consent question. Moreover, the fact that a person across the hall in a different room did not hear any scream does not by itself necessarily resolve either of the above questions. The additional evidence in the record of trial showing the prosecutrix's lack of consent was overwhelming, even considering appellant's denials. In view of the entire record, we conclude that there was no reasonable possibility that the appellant was prejudiced by the error of the military judge. *United States v. Lucas, supra.*

B

At an earlier Article 39(a) session of the trial, held on July 11, 1979, appellant requested the opportunity to obtain a civilian attorney to represent him. The military judge granted a continuance to the defense in order for appellant to retain civilian counsel. At the next session of the trial on July 16, 1979, detailed defense counsel, Captain H. Franklin Young, III, stated that appellant was going to be represented by him alone. Appellant affirmed that he wanted to be defended by Captain Young. Later, appellant pled guilty to all specifications and charges. During the providence inquiry however, it became apparent to the military judge that appellant was unwilling to admit the facts constituting the charged offenses. Accordingly, the judge found appellant's pleas improvident and entered pleas of not guilty in appellant's behalf. Detailed counsel then requested a continuance until July 31, 1979. Appellant also requested that he be allowed to obtain civilian counsel.

On August 13, 1979, another Article 39(a) session was held. At that session appellant was represented by Captain Bryan H. Felmet as individual military counsel and Mr. John D. Watkins of the Georgia Bar as civilian counsel; Captain Young, the detailed counsel, was released by appellant from the case. Mr. Watkins explained to the judge that since he had only been retained the week before, he was not prepared to proceed with the trial even though the Government stated that they were. Mr. Watkins then asked for a trial date "sometime around the 15th of September." Mr. Watkins explained:

There are just so many things that I'm going to request the court to assist us with in this matter. It would be impossible to examine the witnesses that we know that are involved, to examine the premises that we know are involved, to get the necessary tests that we know that are needed, to examine them, and at the same time to go over the record of those that are going to sit in judgment of this

case. It's just going to take—and at the same time, look at the law that's applicable thereto, it's going to take a little time to do that.

Captain Felmet stated that he too had just become involved in the case. The judge then set aside September 17, 18 and 19 for the trial. The judge cautioned counsel that it was "extremely important that all parties receive adequate prior notice of any motions so" trial could "proceed in an orderly manner."

Mr. Watkins explained that the defense had asked for a polygraph examination which had been granted but apparently had not yet been conducted. Also being considered by the defense was construction of a scale model of the barracks for use by the witnesses, and a full psychiatric evaluation of appellant. Mr. Watkins stated that he had also requested the military personnel records jacket of one of the victims. The military judge then advised counsel that he was available for additional Article 39(a) sessions if they were necessary and that both sides should keep him informed of any matters that arose so they could proceed on the scheduled trial date.

On September 7, 1979, trial counsel informed defense counsel in writing that the Government was prepared to proceed with trial on September 24, 1979. The document was hand-carried on that day to Captain Felmet and a copy was sent at the same time to Mr. Watkins who received it three or four days later. Trial counsel listed the witnesses he intended to call: Private First Class Lancaster; Private First Class Ornelas; Private First Class Szczepaniak; Special Agent Balfour; Special Agent Blake; Private First Class McCormick; Private E–2 Jones and Private E–2 Mitchell. Trial counsel also asked to be informed of "the names and addresses of witnesses for the defense." The judge was furnished a copy of this correspondence.

During the period of this continuance, Captain Felmet and Mr. Watkins met on several occasions to discuss trial strategy and to interview witnesses. They interviewed each of the government's witnesses on several occasions and also some potential defense witnesses. They also utilized in the preparation of their case the allied papers, the CID report, the Article 32 investigation report, the personnel files of the witnesses, and notes of the originally detailed defense counsel, Captain Young, regarding his interview with the potential defense witnesses, including Private Davis.

■ We have interpreted the military accused's right to representation by counsel, as guaranteed by Article 27(a), UCMJ, 10 U.S.C. § 827(a), to entail the right to "the *effective* assistance of counsel." *United States v. Rivas*, 3 M.J. 282, 287 (C.M.A. 1977); *United States v. Walker*, 21 U.S.C. M.A. 376, 378, 45 C.M.R. 150, 152 (1972). In addition, an accused is entitled to a reasonably competent counsel who exercises that competence in his client's behalf throughout the trial. *United States v. Rivas, supra; United States v. DiGiulio*, 7 M.J. 848, 856 (A.C.M.R.1979), *pet. denied*, 8 M.J. 167 (A.C. M.R.1979). *See United States v. Walker, supra; United States v. Gaillard*, 49 C.M.R. 471 (A.C.M.R.1974). The precedents of this Court clearly adopt the standard utilized by most of the federal courts. Like those of many federal courts, however, the precedents of the military courts do not specifically define or delineate what are the skills and knowledge demanded of a competent counsel.

In *United States v. DeCoster*, 624 F.2d 196 (D.C.Cir.1979), the Court delineated general guidelines. The Court held that before an accused could prevail on the issue of ineffectiveness of counsel he had to demonstrate: (1) "serious incompetency" on the part of his attorney; and (2) that such inadequacy affected the trial result. *Id.* at 208. DeCoster was found guilty of aiding and abetting an armed robbery and assault with a deadly weapon. The Court of Appeals *sua sponte* raised the issue of competency of trial defense counsel and remanded the case for an evidentiary hearing on that issue. 487 F.2d 1197, 1204–05 (D.C.Cir. 1973). After remand and a hearing on this issue the court considered claims of deficiency as to: (1) failure to interview any of

the prosecution witnesses or potential defense witnesses; (2) tardy filing of a bond review motion; (3) failure to obtain a transcript of the preliminary hearing; (4) an offer to waive a jury trial; (5) failure to make an opening statement; and (6) failure to see that the sentence was properly executed. 624 F.2d at 211–14. In reviewing these alleged deficiencies the standard set forth in Judge Leventhal's plurality opinion was that "[t]he claimed inadequacy must be a serious incompetency that falls measurably below the performance ordinarily expected of fallible lawyers." The Court noted that "the initial burden of demonstrating" ineffectiveness rests upon the defendant. *Id.* at 208. *See id.* at 226 n.18 (MacKinnon, J., concurring) and the cases cited there; *see also United States v. Phillips,* 640 F.2d 87 (7th Cir. 1981), *cert. denied,* 451 U.S. 991 (1981).

The Court in *United States v. DeCoster, supra* at 214, noted:

> In the absence of a governmental impediment to effective assistance of counsel, the court cannot lightly vacate a conviction on the basis of its own appraisal of the performance of defense counsel.

In *United States v. Myles,* 7 M.J. 132, 133 (C.M.A.1979), this Court stated (footnotes omitted) in connection with a defense counsel's failure to disclose to the trial judge the existence of a pretrial agreement:

> If the breach of a counsel's obligation to his client or the court is of the magnitude to rise to inadequate representation, then in that event a new trial must be ordered. Anything short of a finding of inadequate representation must be tested for prejudice to see if the error materially affected the substantial rights of the accused.

Furthermore, in *United States v. Rivas, supra* at 288, this Court stated (footnotes omitted):

> This Court has impliedly rejected the concept that to be considered ineffective, the attorney's efforts must have been so poor as to have rendered the trial a farce or a mockery. Rather, we have "assume[d] that the accused is entitled to the assist-

ance of an attorney of reasonable competence" and have expressed the expectation that the attorney will " 'exercise . . . the customary skill and knowledge which normally prevails . . .' 'within the range of competence demanded of attorneys in criminal cases.' " We believe that to exercise the skill and knowledge which normally prevails within the range of competence demanded of attorneys in criminal cases requires that the attorney act as a diligent and conscientious advocate on behalf of his client.

■ The record of this trial establishes in general that the representation of appellant by his two defense counsel was vigorous and aggressive. Moreover, government evidence shows that prior to trial, defense counsel diligently prepared their case. The government witnesses were interviewed and reinterviewed, apparently in the hope of exposing inconsistencies in their expected testimonies; reports made by the CID and Article 32 investigations were reviewed; trial strategy sessions were held on several occasions; and the trial notes of the originally detailed defense counsel were reviewed and utilized. There can be no colorable argument in the instant case that trial defense counsel were totally or partially ill-prepared for trial. In *United States v. DeCoster, supra* at 210 (footnote omitted), the Court noted:

> [C]laims based on a duty to investigate must be considered in light of the strength of the government's case. "When, . . . the prosecution has an overwhelming case based on documents and the testimony of disinterested witnesses, there is not too much the best defense attorney can do." [Quoting from *United States v. Katz,* 425 F.2d 928, 930 (2d Cir. 1970).]

It is factually obvious that appellant's assertion of consensual intercourse, and voluntary anal sodomy and fellatio with a virgin whom he had just met was on precarious footing. Unfortunately for appellant, his testimony was rebutted by: (1) the testimony of the victim; (2) the testimony of the witnesses who saw the victim immedi-

ately after the attack; and (3) the physical evidence introduced by the Government at trial.

Counsel also requested the testimony of a Dr. Holshouser. His expected testimony concerned his failure to find any sign of physical trauma to the vagina or anus of the allegedly virginal victim of a sexual attack that consisted of a two-hour "routine of sexual intercourse, anal sex, and oral sex, in the same cycle." We agree with the Court of Military Review that Dr. Holshouser's report, admitted at trial at the request of the defense, was an adequate alternative form of evidence.

While we conclude that denied-witness Davis was material to the issue of guilt, we do not conclude under *United States v. DeCoster, supra,* that civilian counsel's belated request for him was a sufficient error, under the foregoing facts, to constitute denial of effective assistance of counsel. He had attempted to find Private Davis before trial and apparently relied on the CID agent's statement for the essence of his testimony. Undeniably, counsel could have more thoroughly anticipated the need for this witness, but the record demonstrates his representation of appellant was adequate. As it did not fall below the performance ordinarily expected of fallible lawyers, we must answer the specified issue in the negative.

The decision of the United States Army Court of Military Review is affirmed.

Judge COOK concurs.

EVERETT, Chief Judge (dissenting):

On the facts before him the military judge did not abuse his discretion in denying the continuance requested at the last minute by defense counsel; their own omissions created the exigency on which the request for a continuance was predicated. However, I believe that the facts of record raise a serious question—unresolved to my satisfaction—as to the effectiveness of the representation afforded appellant by his defense counsel at trial.

Neither the civilian nor military counsel representing appellant interviewed Davis; yet when defense counsel sought the continuance, they represented that Davis would testify that he had heard no screams, although during the time of the alleged rape he had been awake in close proximity to the laundry room where it had occurred. This failure is all the more curious when it is realized that Davis, if he were both awake and in a location close to the incident, would have been the most likely of all prospective witnesses to have heard any scream of the victim.

Likewise, neither counsel interviewed the doctor who had examined the prosecutrix after the incident. As the majority opinion observes, testimony of this witness would have addressed the lack of any sign of physical trauma either to the vagina or to the anus of the prosecutrix—potentially crucial testimony to disprove an alleged sexual attack of two hours consisting of a "routine of sexual intercourse, anal sex, and oral sex, in the same cycle" on a victim who claimed to have been a virgin until that time. The majority opinion notes that the physician's report on the victim was received into evidence and concludes that it "was an adequate alternative form of evidence." 13 M.J. 1, 7. However, my examination of this document reveals that it is illegible generally [1] and, for a lay person, would be unintelligible. I do not believe that court members could have understood the import of this document without some interpretation in court by an expert.

A military " 'accused is entitled to the assistance of an attorney of reasonable competence' and [we] have expressed the expectation that the attorney will ' "exercise . . . the customary skill and knowledge which normally prevails . . ." "within the range of competence demanded of attorneys in criminal cases." ' " *United States v. Rivas,* 3 M.J. 282, 288 (C.M.A.1977) (footnotes omitted). The majority quite accurately set out the extent of both counsel's efforts on behalf of appellant and conclude, "[u]ndeniably, counsel could have more

1. The defense counsel complained, "I can't read his writing."

thoroughly anticipated the need for this witness, but the record demonstrates his representation of appellant was adequate." 13 M.J. at 7. I do not agree.

No matter how extensive the efforts of defense counsel may have been, they cannot and do not compensate for inaction regarding critical aspects of the defense—indeed, in this case *the* critical aspects. *See United States v. Rivas, supra* at 289. To me, counsel's omissions here, notwithstanding otherwise acceptable activity, may call for application of this statement in *United States v. Allen,* 8 U.S.C.M.A. 504, 507, 25 C.M.R. 8, 11 (1957): "Sometimes a single action can be sufficient to show ineffective representation. *United States v. Walker,* 3 U.S.C. M.A. 355, 12 C.M.R. 111."

The present case is akin to *Rummel v. Estelle,* 590 F.2d 103, 104–05 (5th Cir. 1979), where the Court of Appeals stated:

> Two attorneys represented Rummel in connection with the state charges. The first was appointed approximately one month prior to the trial, and the second, whose effectiveness is not challenged, was appointed on the date of the trial to assist the first. Rummel asserts that his first appointed attorney failed to conduct an independent pre-trial investigation into the factual basis of the state's charges and neglected to seek out and interview witnesses whose testimony the petitioner had informed him would buttress his defense.

Since "investigation and preparation are the keys to effective representation," ABA Projects on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function 224 (App. Draft 1971), court-appointed counsel have a duty to interview potential witnesses and "make an independent examination of the facts, circumstances, pleadings and laws involved." (Citations omitted.) Rummel's allegations are sufficient to raise the issue whether his attorneys discharged this responsibility. The fact that they performed other tasks required of them— such as interviewing their client and cross-examining witnesses for the prosecution—obviously is not dispositive.

Without a more complete explanation of the circumstances, I simply cannot put my seal of approval on the representation of an accused in a rape case when the defense lawyers do not personally communicate before trial with the doctor who examined the alleged victim [2] and with the witness who, according to their own claim in seeking a continuance, was best situated to corroborate the accused's claim of consent.[3] Therefore, I would direct that a further hearing be held at the trial level to determine whether circumstances not yet revealed may explain the seeming ineffectiveness of the defense counsel. *Cf. United States v. Vietor,* 10 M.J. 69 (C.M.A.1980); *United States v. Killebrew,* 9 M.J. 154 (C.M.A. 1980); *United States v. DuBay,* 17 U.S.C. M.A. 147, 37 C.M.R. 411 (1967).[4]

---

2. Even the most superficial examination of gynecological literature makes clear the importance of interviewing the examining physician where a sexual assault is alleged. *See* "Alleged Sexual Assault," American College of Obstetricians and Gynecologists Technical Bulletin, Number 52 (November 1978); "The Gynocologist's Role in Treating the Rape Victim," 10 Contemporary Obstetrics and Gynecology 48 (October 1977).

3. At a hearing several weeks before the trial began, the defense counsel indicated that they might wish to have a scale model made of the barracks where the rape allegedly occurred in order to demonstrate more fully the improbability of the victim's version of the incident. In light of these rather ambitious and imaginative plans for defending appellant, it is ironic that neither of the two defense lawyers personally interviewed these witnesses.

4. Under somewhat similar circumstances such a remand was directed in the *DeCoster* litigation. *United States v. DeCoster,* 487 F.2d 1197, 1204–05 (D.C.Cir.1973). *United States v. DeCoster,* 624 F.2d 196, 200 (D.C.Cir.1979), on which the majority opinion relies, was decided on the basis of findings by a trial judge *after* the case had been remanded to the trial court in order to consider the effectiveness of the representation of defendant.