UNITED STATES, Appellee,

v.

Specialist Five Aaron A. DUPAS, SSN
439–84–6620, United States
Army, Appellant.

CM 440507.

U.S. Army Court of Military Review.

6 Dec. 1983.

Captain Judson W. Roberts, JAGC, argued the cause for the appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Lieutenant Colonel William P. Heaston, JAGC, Major Edwin D. Selby, JAGC, Major Robert C. Rhodes, JAGC, and Major Lawrence F. Klar, JAGC.

Captain Daniel N. Velling, JAGC, argued the cause for the appellee. With him on the brief were Colonel James Kucera, JAGC, Major Joseph A. Rehyansky, JAGC, and Captain John L. Plotkin, JAGC.

Before MOUNTS, YAWN and WERNER, Appellate Military Judges.

OPINION OF THE COURT ON
FURTHER REVIEW

MOUNTS, Senior Judge:

Contrary to his pleas, the appellant was convicted of rape, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. His approved sentence provides for a bad-conduct discharge and confinement at hard labor for five years. On 5 February 1982, this Court affirmed the findings and sentence. *United States v. Dupas,* CM 440507 (ACMR 5 February 1982) (unpub.). On 30 August 1982, the Court of Military Appeals reversed the decision of this Court and remanded the case for further review. *United States v. Dupas,* 14 M.J. 28 (C.M.A.1982).[1]

The appellant now asserts that his trial defense counsel, Captain Ogilvie, failed to thoroughly investigate his case and seek, find, and interview potential alibi witness-

---

1. Before the Court of Military Appeals, the appellant contended that his trial defense counsel, Captain Ogilvie, did not adequately respond to queries of his appellate defense counsel regarding his (the appellant's) claim that he had received ineffective assistance of counsel at trial. In consonance with the Court's instructions, we directed Captain Ogilvie to answer the questions of appellate defense counsel and to allow them access to the appellant's case file. As this matter has not been pursued by the appellant, we assume he is satisfied that Captain Ogilvie has complied with our order.

es, which, in turn, denied him effective assistance of counsel. We disagree.

## I

A brief exposition of the facts is necessary to place the appellant's allegation in proper context. Miss Bettina Wagner, a German national, testified at the trial that on the evening of 20 April 1980, she met two strangers, Private First Class Brown and Specialist Four Hooks, at the bahnhof (train station) in Wiesbaden, Federal Republic of Germany. She accompanied them to their barracks, where she spent some time listening to music. The appellant entered the room and, after a brief conversation, offered to drive her back to town; she accepted. The appellant drove her to Wiesbaden and then to Erbach, where she lived. The appellant told her he was too tired to drive back and wanted to stay with her or in a hotel. Miss Wagner told the appellant he could not stay with her but offered to help him find a hotel. During their search, the appellant pulled the car onto a deserted dirt road, told Miss Wagner she would have sexual intercourse with him, choked her with his hands and a seat belt so she would submit to his demands, and raped her. Shortly after the rape, at approximately 0300 hours, they continued to look for a hotel but were unsuccessful. They slept in the car, waking at 0600 hours. The appellant then drove Miss Wagner to the Wiesbaden bahnhof and left her.

The appellant testified that Miss Wagner asked for a ride to Wiesbaden after she learned he was going to a discotheque there. The appellant stated that he drove Miss Wagner directly to the Wiesbaden bahnhof, left her there and did not see her again that night. The appellant further testified that after leaving Miss Wagner he spent several hours in two bars in Wiesbaden, the 69 Club and the Pferdestall, returned to his barracks between 0300 and 0330 hours, and went to sleep.

Miss Wagner reported the incident to the authorities on 24 April 1980. The appellant was interviewed by an agent of the Criminal Investigation Command on 29 April 1980. The appellant's written statement to the agent parallels his testimony at the trial with one exception: he denied stopping between Wiesbaden and his barracks after leaving Miss Wagner.

The record does not reveal when Captain Ogilvie was detailed to represent the appellant or when they first met.[2] However, some time before his trial, the appellant, at Captain Ogilvie's request, wrote a detailed narrative of his activities on the night of 20–21 April, including his patronization of two clubs in Wiesbaden at the time Miss Wagner claimed he was raping her. The appellant now contends he was denied effective assistance of counsel because Captain Ogilvie failed to visit the 69 and Pferdestall clubs and seek out potential witnesses who would corroborate his alibi.

## II

A military accused at a special or general court-martial is entitled to be represented by counsel. Article 27(a), Uniform Code of Military Justice, 10 U.S.C. § 827(a). The right to counsel means the right to effective assistance of counsel, *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), which has been defined as representation by "reasonably competent counsel who exercises that competence in his client's behalf throughout the trial." *United States v. Jefferson,* 13 M.J. 1, 5 (C.M.A.1982) (citations omitted). *United States v. Rivas,* 3 M.J. 282 (C.M.A.1977). However, "representation involves more than the courtroom conduct of the advocate. The exercise of the utmost skill during the trial is not enough if counsel has neglected the necessary investigation and preparation of the case or failed to interview essential witnesses or to arrange for their attendance." *Moore v. United States,* 432 F.2d 730, 739

---

**2.** Since the charges were preferred on 20 June 1982 and investigated pursuant to Article 32, Uniform Code of Military Justice, after 15 July 1982, Captain Ogilvie was almost certainly detailed to represent the appellant, in accordance with the usual practice, at some time between those dates, the earliest of which was two months after the incident.

(3d Cir.1970) (footnote omitted). *Rummel v. Estelle,* 590 F.2d 103 (5th Cir.1979); *Thomas v. Wyrick,* 535 F.2d 407 (8th Cir.), *cert. denied,* 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976). *See Model Code of Professional Responsibility* Disciplinary Rule 6–101(A)(2) (1981); *Standards for Criminal Justice* § 4–4.1 (2d ed. 1980).

■ We begin with the presumption of adequate representation. *United States v. Jefferson,* 13 M.J. at 6; *United States v. Phillips,* 640 F.2d 87, 92 n. 9 (7th Cir.), *cert. denied,* 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981). The appellant has the burden of proving he was not represented by effective counsel. *United States v. Koonce,* 16 M.J. 660, 662 (A.C.M.R.1983); *United States v. Dicupe,* 14 M.J. 915, 918 (A.F.C.M.R.1982). *See United States v. Jefferson,* 13 M.J. at 6; *United States v. DeCoster,* 624 F.2d 196, 208 (D.C.Cir.1979) (en banc). Furthermore, the adequacy of a counsel's performance must be gauged in light of the peculiar facts of each case. *Langston v. Wyrick,* 698 F.2d 926, 931 (8th Cir.1982); *Nelson v. Estelle,* 642 F.2d 903, 906 (5th Cir.1981); *United States v. Fleming,* 594 F.2d 598, 606–07 (7th Cir.), *cert. denied,* 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979).

■ The facts of this case convince us that Captain Ogilvie did not have the duty to search for unknown, potential witnesses from the two clubs. Although we cannot determine with pinpoint accuracy when the appellant first told Captain Ogilvie of his alibi, the date was, according to Captain Ogilvie's uncontradicted assertion, "many weeks after the fact." Given the passage of time and the appellant's failure to comply with his counsel's request for assistance and information about the identities of potential alibi witnesses, we can only conclude there was no likelihood that a search by Captain Ogilvie would have been successful.[3] Captain Ogilvie determined that the only realistic strategy available was to focus on and expose the weaknesses of the Government's witnesses.[4] The decision to devote his energies before trial to this line of defense to the exclusion of one offering no hope of success was appropriate. *See generally Washington v. Strickland,* 693 F.2d 1243 (5th Cir.1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983). *See also United States v. Rivas, supra; United States v. Koonce, supra* (appellate courts will not second guess a defense counsel's tactical decisions merely because they are unsuccessful). Accordingly, we find the assignment of error without merit.

The appellant also contends that our refusal to compel Captain Ogilvie to respond to his queries when we were moved by him to do so and Captain Ogilvie's failure to provide answers to those queries pursuant to our order in a timely fashion denied him due process of law. The issue has been mooted by our resolution of the allegation of ineffective assistance of counsel. However, we find that Captain Ogilvie responded to our order within a reasonable period of time and that the appellant has not been denied due process.[5]

The findings of guilty and the sentence are affirmed.

Judge YAWN and Judge WERNER concur:

---

3. Captain Ogilvie also understandably doubted the validity of the appellant's version of the events of 20–21 April 1980 in light of the appellant's contradictory statements to him and the CID; the lack of any corroborating evidence; the physical evidence; and the pretrial statement of Hooks that the appellant had confessed to him on 21 April that he had had intercourse with Miss Wagner earlier that day and had used a seat belt to facilitate the act. Hooks also stated that after the appellant had been questioned by the CID on 24 April 1980, the appellant had requested that he (Hooks) and Brown lie to the CID about the time he and Miss Wagner had left the barracks.

4. For example, Hook's motives to falsely implicate the appellant and the deficiencies of Miss Wagner's testimony were highlighted by Captain Ogilvie's thorough cross-examination of these witnesses.

5. When this case was initially before this Court, the appellant alleged that Ogilvie was ineffective because he did not interview Specialist Gilmore, a potential alibi witness. We note that the appellant has withdrawn this assigned error as he can no longer vouch for Gilmore's veracity.