**UNITED STATES**

v.

**Lindsey SCOTT, 407 78 9524, Corporal (E–4), U.S. Marine Corps.**

**NMCM 84 0447.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 12 Oct. 1983.

Decided 18 June 1984.

LCDR William A. DeCicco, JAGC, USN, Appellate Defense Counsel.

Gary Myers, Civilian Defense Counsel.

John Leino, Civilian Defense Counsel.

LCDR John B. Holt, JAGC, USN, Appellate Government Counsel.

Before SANDERS, Senior Judge, and MAY and CASSEL, JJ.

MAY, Judge:

Appellant was convicted, contrary to his pleas, by general court-martial, officer members, of attempted murder, rape, forcible sodomy, and kidnapping in violation of Articles 80, 120, 125 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 920, 925, 934. He was sentenced to a dishonorable discharge, confinement at hard labor for 30 years, forfeiture of $500.00 per month for 36 months, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged and ordered credit for 11 days served in pretrial confinement in accordance with *United States v. Allen,* 17 M.J. 126 (CMA 1984).

Appellant was represented at trial by individual civilian counsel, Mr. K., assisted by associate defense counsel detailed to the case, Major R., USMC. Subsequent to trial appellant discharged his trial civilian counsel, Mr. K., and retained the services of Mr. M. and Mr. L., civilian counsel who now represent appellant at the present stage of appellate review.

Appellant now assigns the following error:

APPELLANT HAS BEEN DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF COUNSEL'S FAILURE TO ADEQUATELY INVESTIGATE AND INTERVIEW ALIBI WITNESSES.

The salient aspect of appellant's present contention is that he was denied the effective assistance of counsel mandated by the Sixth Amendment and related military and

federal case law. *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Cronic,* — U.S. —, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *United States v. Jefferson,* 13 M.J. 1 (CMA 1982); *United States v. Rivas,* 3 M.J. 282 (CMA 1977). The specific gravamen of appellant's assignment of error is that Mr. K., the civilian defense counsel, failed to take both timely and adequate steps in the preparation of appellant's defense, primarily in regards to appellant's alibi defense. Appellant further specifies that the prejudicial impact of inadequate pretrial preparation upon the presentation of appellant's defense created the reasonable probability that the outcome of trial would have been different. *See United States v. Strickland, supra; United States v. Jefferson, supra.*

Conversely, the government's response is that the mandate of present appellate case law, dictates that the findings and sentence as approved below be affirmed. The government's analysis, most recently expressed in *Strickland,*[1] gives significant prominence to the issue of *prejudicial impact.* In other words, while not conceding defense attorney deficiency in this case, the government asserts that even if counsel deficiency was present in this case, the weight of government evidence at trial eliminates any reasonable probability of a different outcome.

The government's argument, however, fails to recognize that the impact of inadequate trial preparation may not be discernible in any degree from examination of the trial record or from the view of the incourtroom observer. The presentation of a defense case, particularly an affirmative defense, obviously is dependent upon the quality and associated weight of the defense evidence. Inadequate case preparation by the defense counsel may enervate the accused's response to the government's trial evidence. The determination, therefore, of the probable outcome of the trial

based upon an analysis of the government's evidence ranged against a defense which has been weakened by counsel, rather than evidentiary, deficiency overlooks the necessary adversarial essence of the contested criminal trial.

We cannot, therefore, unconditionally accept the premise of the government's argument of "no prejudice." The record before us lacks, under the specific circumstances of this case, sufficient assurance that an accurate reflection of the relative weight of the government's case juxtaposed against the accused's proffered affirmative defense is contained in the trial record. Our reservations regarding the government's contention of nonprejudicial impact is not based on any lack of prosecutorial vigor by government trial counsel. On the contrary, we are impressed by the high quality of litigation skills exhibited by both the trial counsel and assistant trial counsel in this case. The government's case was ably presented. It is the uncertain nature of the defense effort, when considered in light of the post-trial affidavits submitted on behalf of appellant which presently concerns this Court. We decline, therefore, to evaluate the present record for prejudicial impact *prior* to determining the existence, if any, of defense counsel deficiencies in this case.

We now have before the Court a number of assertions, via affidavit, of apparent defense witnesses, particularly purported *alibi* sources, who contend that they were not interviewed by Mr. K., the civilian defense counsel or Major R., the detailed military defense counsel, at *any time* prior to their appearance on the witness stand at trial. The affidavits of these witnesses indicate that they had been interviewed prior to trial, by a Mrs. Jackson, a private party and non-lawyer, who had offered her services to civilian counsel after being contacted by appellant. The affidavits of these witnesses assert that this contact with Mrs.

---

**1.** We do not, by our reference to *Strickland* presently find that the standards and analysis presented by Justice O'Connor are applicable and controlling in this case. The determination of controlling law, given our decision here, may be more appropriately addressed in any subsequent review by us in this case.

Jackson occurred *only* after the conclusion of the Article 32, UCMJ, pretrial investigation, approximately *two months* after appellant retained the services of his civilian counsel, Mr. K., and apparently some time after civilian counsel was on notice of a potential alibi defense.

We also have before us the affidavit of the civilian trial defense counsel, Mr. K., which clearly contradicts the assertions of appellant's witnesses. In that affidavit Mr. K. asserts that *all* defense witnesses were interviewed prior to their appearance at trial by either himself or "co-counsel" [sic].

Both the oral and written presentations by appellate government counsel and the civilian counsel presently representing appellant before this Court present a battle of affidavits and unsworn arguments asserting on one hand, in behalf of the government: a hard-fought, but fair trial in which adequate preparation and litigation skill was present in both the government and defense litigation teams and on the other hand, in behalf of appellant: that clear evidence of defense attorney dereliction to the prejudice of appellant was present in this case.

We agree with all parties that on the face of the record, this was a hard-fought criminal trial. We certainly need not pause long over whether or not a brutal and vicious assault was committed upon the person of the victim in this case. At obvious issue in this case, however, is whether the appellant was, beyond all reasonable doubt, regardless of any defense attorney deficiencies, the perpetrator of the offenses as the government contends, or was he some 12–15 miles from the scene of the crimes at the time these apparently premeditated offenses were in progress, as appellate defense counsel contends via an asserted alibi defense?

What we specifically find, at this stage of appellate review, however, is a lack of sufficiency in the trial record, the appellate briefs, affidavits, and the oral assertions of appellate government and defense counsel related to the performance of the trial defense attorney in this case.

We emphasize that we are not now ruling on the sufficiency of the evidence related to the *findings* in this case. That, in our view, is presently subordinate to the issue of whether or not in the pretrial preparation and courtroom response to the charges brought against him, appellant was afforded that level of defense counsel effort and performance mandatory in any court-martial of a member of the naval service.

We are not unmindful of the impact of our interim decision here. A brutal and premeditated attack was obviously perpetrated upon the person of a terrorized young dependent wife, relying upon the victim's understandable preoccupation with the unfounded report of her Marine husband's serious injury. That ruse was used to lure the victim from her off-base apartment on the pretext of transporting the distraught wife to an on-base hospital to see her husband. The tragic impact of the subsequent brutal and prolonged attack upon the victim would be compounded, however, if the legal standards applicable to the trial of a member of the naval service who is accused of the attack have not been met.

Accordingly, the record of trial and all related appellate documents are returned to the Judge Advocate General of the Navy for transmittal to the appropriate convening authority. The convening authority may take one or more of the following courses of action:

A. *Order the conduct of an evidentiary hearing. United States v. Dubay,* 17 USCMA 147, 37 CMR 411 (1967). *See also* Article 39(a), UCMJ, 10 U.S.C. § 839(a). That hearing will be conducted solely on the issue of the level of defense counsel assistance rendered on behalf of appellant in this case. The appellant as well as the government will be afforded the opportunity to call witnesses and present documentary evidence in compliance with the Military Rules of Evidence, on this issue. Specifically, at a minimum, the following areas of inquiry shall be addressed:

1. Date civilian defense counsel's services formally retained by appellant.

2. Number/length of conferences between appellant and civilian defense attorney from date of retention until date attorney discharged by appellant.

3. Names and relevance of defense witnesses who were interviewed by civilian counsel, detailed military defense counsel, or other defense agents prior to trial.

4. Dates of interviews, approximate length of interviews, and specific identity of the interviewers of all defense witnesses prior to trial.

5. Specific circumstances related to appellant's retention of the services of Mrs. Lori Jackson and the extent of control and instructions issued by civilian defense counsel to Mrs. Jackson, prior to, and during trial.

6. Extent of pretrial preparation including visits, if any, by defense counsel or their agents, to scene of the victim's abduction and sites of asserted alibi contacts.

7. The instructions transmitted by civilian defense counsel to detailed military defense counsel relative to that associate counsel's pretrial and trial responsibilities.

The above areas represent the minimal range of inquiry. The presiding judge at the hearing will insure the recordation of a verbatim record and make findings of fact on the record prior to transmittal of the entire record of trial, and record of the evidentiary hearing to this Court. The findings of fact by the presiding judge at the evidentiary hearing will relate to the factual activities of defense counsel in preparation for the trial of this case.

B. *Order Rehearing.* The convening authority may, subsequent to the above hearing or if the evidentiary hearing described above is not deemed practical, order a rehearing of the case.[2]

Senior Judge SANDERS * concurs.

CASSEL, Judge (concurring):

I concur with the action ordered in this case. However, I do not agree that we should postpone a decision as to the controlling law. (See footnote one of the principal opinion). *Strickland v. Washington,* — U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), clearly sets the following minimum constitutional standards for testing for adequacy of representation:

(a) the defendant must show that counsel's performance was deficient and

(b) that the deficient performance prejudiced the defense;

(c) if it is easier to dispose of an ineffectiveness claim on the ground of lack of specific prejudice, that should be done first.

If I were to apply those standards and that procedure, I would affirm the findings of guilty in this case. It is clear, however, that Congress, the President, the Court of Military Appeals or the service Judge Advocates General can set a different, but at least equal, minimum standard for practice in military tribunals. I believe we have in fact developed a different and certainly not a lower standard. Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a), and *United States v. Jefferson,* 13 M.J. 1 (CMA 1982), direct us to *first* examine the record and ascertain whether counsel's performance was deficient to the extent that it was below the performance ordinarily expected of lawyers. Then, only after finding that standard has not been met, we test for prejudice under Article 59(a), UCMJ, using a standard not less than that enunciated in *Strickland.*

Thus it is plain to see why I concur with the action in this case. As Chief Judge Everett stated in his dissent in *Jefferson,*

---

**2.** Nothing contained in this interlocutory opinion is intended to divest the convening authority of his authority under the Code to dismiss the charges in the event he believes that an evidentiary hearing or rehearing is impractical.

* Captain Edward K. Sanders took final action on this case prior to his detachment on 13 June 1984.

"[w]ithout a more complete explanation of the circumstances, I simply cannot put my seal of approval on the representation of the accused in [this] rape case...." *Id.* at 8. The affidavits in the record attacking the conduct of the civilian counsel—including that provided by detailed defense counsel—are not from disinterested parties. Under the circumstances we have a conflict of fact in the affidavits and we must resolve those conflicts.