UNITED STATES

v.

Master Sergeant Rodney H. JEFFRIES,
FR218–60–5247, United States
Air Force.

ACM 29018.

U.S. Air Force Court of Military Review.

Sentence Adjudged 6 Sept. 1990.

Decided 29 Oct. 1991.

Appellate Counsel for the Appellant: Gary R. Myers, Esq. (argued), Lieutenant Colonel Jeffrey R. Owens, and Captain Beverly B. Knott.

Appellate Counsel for the United States: Major Jeffrey C. Lindquist (argued), Colonel William R. Dugan, Jr., and Lieutenant Colonel Brenda J. Hollis.

Before O'HAIR, RIVES, and MILLS, Appellate Military Judges.

## OPINION OF THE COURT

RIVES, Judge:

This case presents a two-fold claim of ineffective assistance of counsel, raising the questions: Is an accused deprived of conflict-free counsel when his attorney also represents a potential witness? Is an accused denied effective assistance when one member of the defense team is alleged to have been unprepared and ineffective? Here, we find no error and affirm.

I

Prior to arraignment, the military judge mentioned that three conferences had been conducted under R.C.M. 802. In those sessions, the trial counsel argued that the civilian defense counsel, Mr. Miller, had a conflict in representing both the appellant and a Ms. Wiley. Wiley was an acquaintance of the appellant and Shalonn Sanders, a key prosecution witness.

Miller represented Wiley, a civilian, in his role as a part-time public defender. Civilian authorities had apparently charged her with various drug offenses. The trial counsel believed that Wiley may have had information helpful to the prosecution of the appellant. He stated that the county attorney was "willing to consider some type of deal" in return for Wiley's cooperation in the appellant's court-martial. The defense insisted no conflict existed, because Wiley did not have the sort of information desired by the prosecution. The defense contended Miller could effectively and ethically represent both the appellant and Wiley.

On the morning of the appellant's court-martial, Wiley and Miller met with the trial counsel. As arranged at one of the R.C.M. 802 sessions, the trial counsel interviewed Wiley to learn if she could assist with the prosecution of the appellant. Wiley told the prosecutors she had no information pertinent to the appellant's trial. The trial counsel, however, believed that Miller's representation of the appellant denied Wiley the opportunity to be advised by an attorney who was concerned only with her best interests. He was convinced that Wiley may have been more cooperative if she was represented by another attorney.

In response, Miller stated he had met with Wiley on four occasions, and she had consistently denied having the sort of information the prosecution desired. He believed there was no conflict of interest because Wiley "has no knowledge that's relevant to this case." The detailed military counsel added that he was satisfied Miller "could zealously represent" both Wiley and the appellant. He noted that the local Chief Public Defender had been consulted and he also did not believe a conflict existed.

The military judge inquired into the conflict of interest issue with counsel. Since Wiley denied knowing anything about the appellant's case, the judge determined that no conflict of interest existed and decided not to sever the relationship between the appellant and Miller, his "civilian counsel of choice." Thereafter, Wiley was not mentioned at the appellant's trial. The military judge did not discuss the conflict issue with the appellant.

A

The appellant entered pleas of not guilty to charges of possession, use, and distribution of cocaine. In his opening statement to the panel of officers, the trial counsel declared the government would have five witnesses: two criminal investigators and three persons who had used cocaine with the appellant.

The government first called Shalonn Sanders. She was a somewhat reluctant witness against the appellant. When the trial counsel asked why it was hard for her

to testify, she stated: "I'm the mother of the man's child, number one; I don't want to see him hurt; I didn't want to be here." She and the appellant were never married; throughout the time she knew him, she was married to another man. The appellant provided some child support for their daughter.

Sanders testified as part of a plea bargain with local authorities, who had charged her with the criminal sale of dangerous drugs. At the appellant's court-martial, Sanders discussed using cocaine with him from February 1988 to about April 1990. Sometimes, they used the drug three or four times a week; other times, they would go more than a month without using it.

The defense sought to impeach Sanders by showing she and the appellant had argued and she had threatened him. The defense brought out the fact that, although she was still a military dependent, she had been barred from base because of a shoplifting conviction. Responding to cross-examination questions, she said that she had gone through a treatment program, had not used cocaine for two months, and was no longer addicted to the drug. The defense did not directly attack her allegations that she had used cocaine on numerous occasions with the appellant.

### B

The court-martial recessed so counsel could research an evidentiary matter involving Sanders' testimony. The trial did not reconvene until the next afternoon, when the defense announced a change of pleas in an Article 39(a) session. A plea bargain had been reached, and the appellant pleaded guilty to possession and use of cocaine and not guilty to distribution of cocaine. The military judge conducted a full and complete inquiry into the providence of the guilty pleas and the pretrial agreement. *See* R.C.M. 910; *United States v. Care*, 18 U.S.C.M.A 535, 40 C.M.R. 247 (1969); *United States v. Green*, 1 M.J. 453 (C.M.A.1976). After the military judge found the pleas provident, the government withdrew the charge of distrib-

uting cocaine, as prescribed in the pretrial agreement.

Following acceptance of the revised pleas, the members heard the sentencing case. The trial counsel introduced a stipulation of fact, personal data information, a record of a civilian court conviction for driving under the influence of alcohol, and the appellant's performance reports. The prosecution called no witnesses. The defense submitted 56 documents and the appellant made an unsworn statement to the members. After arguments and instructions, the members returned their sentence of a bad conduct discharge, confinement for 12 months, forfeiture of $424 pay per month for 12 months, and reduction to E–1. That sentence was within the limitations of the pretrial agreement and was approved by the convening authority.

### II

We first consider whether Miller, the civilian counsel, was conflicted from defending the appellant because of his representation of Wiley. The appellant's current contention reverses the parties' arguments at the trial level. The trial counsel believed Wiley had information that could help the prosecution's case, and he asserted that Miller's representation of both Wiley and the appellant hindered his efforts to have Wiley cooperate. Now, the appellant claims that Wiley had exculpatory information and that he was denied the ability to present those matters because his attorney also represented Wiley.

Dual representation of two or more accused by the same attorney is not a per se violation of the Sixth Amendment. *United States v. Newak*, 24 M.J. 238, 241 (C.M.A.1987). However, when a potential conflict of interest exists, the military judge must "inquire into the propriety of multiple representation." *United States v. Hurtt*, 22 M.J. 134, 136 (C.M.A.1986), (citing *Cuyler v. Sullivan*, 446 U.S. 335, 347, 348, 100 S.Ct. 1708, 1718, 1718, 64 L.Ed.2d 333 (1980)). If the military judge fails to conduct such an inquiry, a rebuttable presumption arises that the appellant was prejudiced by the conflict of interest caused

by the multiple representation. *United States v. Devitt,* 20 M.J. 240 (C.M.A.1985); *United States v. Breese,* 11 M.J. 17, 23 (C.M.A.1981).

■ The military judge here did inquire into the possible conflict caused by Miller's representation of both Wiley and the appellant. He noted that Wiley persisted in saying she had no information relevant to the appellant's prosecution. This was true even though she was clearly aware of the potential advantage in her own criminal case if she cooperated with the prosecution of the appellant. She also knew that a different public defender could be substituted for Miller as her counsel. The military judge concluded that no conflict existed.

We are satisfied the military judge conducted an appropriate inquiry into the propriety of Miller's representation of both the appellant and Wiley. He properly determined there was no conflict of interest. Having made that decision, he was not obliged to directly discuss the conflict issue with the appellant. *See Breese,* 11 M.J. at 20; *see also United States v. Davis,* 3 M.J. 430, 434 (C.M.A.1977). The conflict of interest argument had been raised by the government and opposed by the defense. The decision not to sever Miller's relationship with either of his clients seemed to inure to the sole benefit of the appellant: if anything, a potential prosecution witness would not be available to testify.

■ The appellant asserts Wiley could have provided exculpatory evidence for him. In a post-trial affidavit, he submits that Wiley would have testified she did not witness him abusing drugs, and that he had "instead, strongly urged Shalonn Sanders ... not to use drugs." That view, of course, is contrary to Miller's assertions that Wiley had no information relevant to the appellant's court-martial. It also conflicts with Wiley's statement along the same lines to the trial counsel.

Even if we fully accept the appellant's assertions about Wiley's testimony, we would not find a prejudicial conflict. Article 59(a), UCMJ, 10 U.S.C. § 859(a). As outlined in their opening statement, the prosecution intended to call three witnesses who had used cocaine with the appellant. Wiley was not included among the three. In the midst of the testimony of the first witness, Sanders, the appellant reconsidered his pleas. The military judge conducted a careful inquiry into the providence of the pleas of guilty. During that inquiry, the appellant reiterated his satisfaction with his "defense counsel and their advice." While appellate defense counsel urge that Sanders had been substantially discredited and the change of pleas merely reflects Miller's incompetence, we disagree. *See generally United States v. Cole,* 31 M.J. 270, 272 (C.M.A.1990) (concerning the breadth of our review authority under Article 66, 10 U.S.C. § 866).

### III

The appellant also complains that he was denied his Sixth Amendment right to effective assistance of counsel because Miller was unprepared and ineffective. He broadly asserts that Miller failed "to represent [him] at trial." He states that Miller had urged him to accept a pretrial agreement prior to trial, "then turned the actual trying of the case over to detailed military counsel;" that he "not so subtly encouraged a guilty plea during a recess;" and that he "had done no preparation whatsoever for the sentencing portion of the trial." These statements are either unsupported by the record or, in any event, do not amount to ineffective assistance of counsel.

The appellant originally entered pleas of not guilty. Miller provided an extensive road map of the defense case in his opening statement. The detailed military counsel cross-examined the first prosecution witness, Shalonn Sanders. Due to the change of pleas, Sanders was the only witness called by the government. The military counsel questioned the appellant in his unsworn statement, and he also argued in sentencing. As Miller relates in a post-trial affidavit, he and the detailed military counsel "decided the division of labor and we discussed our plan in advance with [the appellant]. He agreed with the manner in which we intended to handle his case." We

note that had the military counsel believed his civilian counterpart was not performing his job competently, he would have had a duty to remedy the situation immediately. ABA Standards for Criminal Justice: The Defense Function, 2d ed. (1986 Supp.), Standard 4–8.6, Commentary, p. 4.116.

Competency of trial defense counsel is a recurring allegation that often seems attractive to an accused who has been convicted. *See United States v. Polk*, 32 M.J. 150, 152 (C.M.A.1991); *United States v. McGillis*, 27 M.J. 462 (Daily Journal, C.M.A.1988) (summary disposition). However, "hindsight quibbling over trial tactics ... [is] not a sufficient basis to warrant post conviction relief. The actions and decisions of the trial counsel are not to be measured in terms of results." *United States v. Donley*, 33 M.J. 44, 48 (C.M.A.1991), *quoting Shaw v. State*, 276 S.C. 190, 277 S.E.2d 140, 142 (1981).

■ We are asked to find ineffective assistance here in part because of the defense counsel's discussion of a pretrial agreement with their client. In fact, counsel would have been remiss if they had *not* provided such advice. In *United States v. Lonetree*, 31 M.J. 849, 874 (N.M.C.M.R.1990), *pet. granted*, 32 M.J. 460 (C.M.A.1991), our sister Court went so far as to "hold that it would be a violation of an accused's Sixth Amendment right for a defense counsel to fail to fully inform and advise his client of the right to negotiate a pretrial agreement and to intentionally mislead his client concerning the probable outcome of the trial."

■ A portion of the appellant's current argument is that he does not believe his civilian attorney earned his fee. That contention could lead to a quantum meruit claim, which of course would have to be pursued elsewhere than before an appellate criminal court. Even if that allegation is true, however, a denial of effective assistance of counsel has not necessarily been shown.

■ When an accused is represented by multiple counsel, the issue of effective representation is determined by the performance of the defense *team*. *See generally Lonetree*, 31 M.J. at 875 (finding the defense adequate when at least one of four counsel performed a necessary task). A dispute over the effective assistance of counsel cannot be resolved by a simple analysis of how frequently a particular counsel spoke at trial. We must look to the record and decide if the overall performance of the defense meets constitutional standards, realizing that the trial defense counsel benefits from a presumption of competency. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

■ The Supreme Court has established a two-pronged test to evaluate this Sixth Amendment issue: the appellant must first show that the trial defense counsel's performance was deficient, and must then establish that the deficient performance prejudiced the defense so as to deprive the accused of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). As we have discussed, the standard is extremely stringent. *United States v. Barnard*, 32 M.J. 530, 533 (A.F.C.M.R.1990).

Here, the defense counsel demonstrated their competency throughout the trial. The change of pleas obviously changed the presentation of the defense case. The defense showed their preparation for the sentencing phase of the trial by submitting a large number of documents on behalf of the accused. The defense also had the appellant ready with a cogent unsworn statement and presented a compelling sentencing argument. *See United States v. Stephenson*, 33 M.J. 79 (C.M.A.1991). The appellant was provided a vigorous defense throughout his trial. We hold that he has not shown that he was denied the effective assistance of counsel.

During oral argument, appellate defense counsel amended their prayer for relief. We are now asked to order a post-trial evidentiary hearing. *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411

(1967). Such hearings have proven useful in resolving ineffectiveness of counsel claims. *See United States v. Scott,* 18 M.J. 629 (N.M.C.M.R.1984), *rev'd,* 24 M.J. 186 (C.M.A.1987). We have determined, however, that a *DuBay* hearing is not necessary here. Counsel clearly had reasonable explanations for their actions in the defense of this case. Their decisions fall well within the performance expected of defense counsel. *See United States v. DiCupe,* 21 M.J. 440, 442 (C.M.A.1986), *cert. denied,* 479 U.S. 826, 107 S.Ct. 101, 93 L.Ed.2d 52 (1986).

IV

The findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judge O'HAIR and Judge MILLS concur.