**UNITED STATES, Appellee,**

v.

**Specialist Four Michael J. KIDWELL, 263–45–7731, United States Army, Appellant.**

**CM 443582.**

U.S. Army Court of Military Review.

18 Sept. 1985.

For Appellant: Lieutenant Colonel William P. Heaston, JAGC, Major Stephen R. Dooley, JAGC, Captain Vivian B. Wiesner, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, Captain Nancy D. Glazier, JAGC (on brief).

Before WOLD, FELDER, and NAUGHTON Appellate Military Judges.

## OPINION OF THE COURT

WOLD, Senior Judge:

### I

Appellant committed a series of drug offenses in the Federal Republic of Germany on 5 May 1982,[1] then committed additional offenses on 1 August 1982.[2] Pursuant to his pleas, appellant was convicted of both sets of offenses. He was sentenced by the trial judge to a dishonorable discharge, confinement for four years and six months, forfeiture of all pay and allowances, and reduction to Private E-1. The convening authority approved the findings and the sentence as adjudged.

Appellant was initially represented by Mr. Robert J. Fiore, a civilian attorney admitted to the bar in the State of New York and practicing in the Federal Republic of Germany. Mr. Fiore was retained to defend appellant against the 5 May charges.

Sometime in June, appellant told Mr. Fiore that he could furnish information concerning the whereabouts of a quantity of blank military identification cards which had recently been stolen. Mr. Fiore regarded this information as a valuable bargaining chip, since there had recently been widespread terrorist activity against United States officials and installations and there was official concern that the stolen cards would be used to defeat anti-terrorist security measures. Mr. Fiore approached the chief of military justice of the 1st Armored Division to try to negotiate favorable treatment for his client in exchange for this information. They struck a bargain in which appellant was to provide assistance resulting in the recovery of the stolen cards. In return, the chief of military justice was to recommend that appellant be granted an administrative discharge in lieu of trial for the 5 May offenses. Both sides understood that the chief of military justice could not grant an administrative discharge and was not speaking for the division staff judge advocate or for the division commander, who had approval authority.[3]

The next day, appellant surrendered a substantial portion of the stolen cards to military investigators. The chief of military justice considered this satisfactory performance of appellant's part of the bargain and recommended to the staff judge advocate that if appellant requested an administrative discharge it be approved. The chief of military justice later testified that a request for discharge would have been processed without delay if one had been submitted at that point, but neither he nor anyone in a position to speak for the staff judge advocate, appellant's intermediate commanders, or the division commander has indicated whether it would have been approved.

Mr. Fiore testified in some detail about his actions, his motives, and the surrounding circumstances. He said that at the point when the chief of military justice recommended appellant's discharge, he (Mr. Fiore) believed that if a request for discharge were submitted, it would be granted. However, in order to keep appellant operating as an informant, Mr. Fiore deliberately failed to submit a request. Mr. Fiore explained that he felt that the information and results which he expected appellant to produce were of such great value to society that appellant's interests

---

1. Possession of 14.82 grams of amphetamine (Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892 [hereinafter UCMJ]); transfer of 3.645 grams of amphetamine (Article 92, UCMJ); possession of drug paraphernalia (Article 92, UCMJ); possession of one gram of marijuana (Article 134, UCMJ, 10 U.S.C. § 934).

2. Failure to possess a leave form in violation of a general regulation (Article 92, UCMJ); possession of 481 grams of marijuana (Article 134,

UCMJ). Various other charges were dismissed or resulted in findings of not guilty.

3. Indeed, it was decided to keep the division commander and his staff judge advocate ignorant of the arrangement with appellant. Considered *in toto*, the evidence in the record of trial indicates that the chief of military justice was somewhat overexcited by the opportunity to play the part of a spymaster.

were insignificant in comparison.[4] (As noted above, appellant committed additional offenses on 1 August, by which time a prompt request for discharge based on the 5 May offenses would presumably have been processed and either approved or disapproved.)

Based on Mr. Fiore's own testimony, it appears that he was unfaithful to his client.[5] However, it is not our task to sit in judgment of Mr. Fiore's professional ethics. It is our responsibility to determine whether appellant was prejudiced in the legal sense as a result of Mr. Fiore's actions or by the failure of the government to deal fairly with appellant or fulfill its promises to appellant. We will deal first with the conduct of the government.

## II

██ Appellant was promised that the chief of military justice would recommend approval of an administrative discharge in lieu of trial for appellant's 5 May offenses. The chief of military justice made such a recommendation. When the trial judge learned of the events outlined above, and was told that the division commander had not been informed of them in the staff judge advocate's pretrial advice, he ordered a new advice. Appellant then submitted a request for an administrative discharge in lieu of trial. This request was considered and denied by the division commander.

There is no doubt about what the government agreed to do and there is no doubt that that is what it did; the chief of military justice recommended that appellant be granted an administrative discharge and the division commander considered that recommendation. The division commander's denial, always a possibility under the

agreement, is amply accounted for by appellant's 1 August offenses; therefore, we have no reason to suspect that the division commander did not consider the request in good faith. The government has fulfilled its part of the bargain.

This being true, cases such as *United States v. Brown*, 13 M.J. 253 (C.M.A.1982), *United States v. Kazena*, 11 M.J. 28 (C.M.A.1981), and *United States v. Dawson*, 10 M.J. 142 (C.M.A.1981), which deal with the interpretation and enforcement of pretrial agreements, are clearly inapplicable. *Cooke v. Orser*, 12 M.J. 335 (C.M.A.1982), is also inapplicable. Here we have no overreaching by an agent of the government, nor any detrimental reliance on any explicit or implied promises by an agent of the government. The problem arises from Mr. Fiore's failure to submit a timely application for discharge. We turn to the question whether this failure constituted a denial of the effective assistance of counsel.

## III

██ *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), held that different burdens of proof apply to defendants who seek relief on the grounds of ineffective assistance of counsel, depending on the cause of the claimed ineffectiveness. The Supreme Court recognized three categories of situations.

First,

[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. See *United States v. Cronic*, ... [— U.S. ——] 104 S.Ct.

---

**4.** Mr. Fiore also asserted that his client had wanted to continue his undercover efforts in order to gain the favor of the German authorities on behalf of his fiance, who was under investigation for violations of German drug laws. *Assuming that this was so, it was no reason to forego appellant's administrative discharge, because appellant could have continued to work with the German authorities as a civilian had they wanted his help. Under the circumstances, the United States Army would pre-

sumably have cooperated by leaving appellant in Germany had appellant and the German authorities made such a request.

**5.** Neither of the parties has advanced argument or evidence to the contrary. We will assume, for the decision of this case, that Mr. Fiore testified truthfully about his actions and his motives.

[2039] at 2046–2047, and n. 25 [80 L.Ed.2d 657 (1984)].

104 S.Ct. at 2067.

Second,

[o]ne type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan*, 446 U.S. [335], at 345–350, 100 S.Ct. 1708, at 1716–19 [64 L.Ed.2d 333 (1980)], the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest.... Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and "that an actual conflict of interest adversely affected his lawyer's performance."

104 S.Ct. at 2067.

Third,

[c]onflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice.

It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding....

On the other hand, we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case....

. . . .

... The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

104 S.Ct. 2067–2068.

In *United States v. Davis*, 20 M.J. 1015 (A.C.M.R.1985), we found the United States Court of Military Appeals precedents governing this third category of ineffectiveness claims to be consistent with *Strickland.* "Taken together, we find these principles congruent with the *Strickland* requirement of a breach of professional competence cou-

pled with a showing of a 'reasonable probability' of outcome-determinative prejudice." Slip op. at 6. As we shall see, the United States Court of Military Appeals precedents governing conflict of interest situations are also congruent with *Strickland.*

In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), which was cited with approval in *Strickland,* the Supreme Court held that an actual conflict of interest between clients in a multiple representation situation results in a conclusive presumption of prejudice when that conflict of interest has had a detrimental impact on the defendant's case:

In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. In *Glasser v. United States*, [315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)], for example, ... [s]ince [an] actual conflict of interest impaired Glasser's defense, the Court reversed his conviction.

*Dukes v. Warden*, 406 U.S. 250 [92 S.Ct. 1551, 32 L.Ed.2d 45] (1972), presented a contrasting situation.... Since Dukes did not identify an actual lapse in representation, we affirmed the denial of habeas corpus relief.

... Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. See *Holloway [v. Arkansas*, 435 U.S. 475, 487–491, 98 S.Ct. 1173, 1180–1182, 55 L.Ed.2d 426 (1978)]. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. See *Glasser, supra,* [315 U.S.] at 72–75 [62 S.Ct. at 465–67].

... We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual

conflict of interest adversely affected his lawyer's performance. 446 U.S. at 348–350, 100 S.Ct. at 1718–19 (footnotes omitted). In *United States v. Breese*, 11 M.J. 17 (C.M.A.1981), the United States Court of Military Appeals adopted the principles set forth in *Cuyler*.[6]

Thus the rule currently applicable to trials by court-martial is that a conflict of interest means an "actual conflict of interest" in which a lawyer "actively represent[s] competing interests." In such situations, the conflict of interest must "adversely affect [the] lawyer's performance" in order to merit relief. Where it does, prejudice to the client is conclusively presumed.

### IV

■ Did the case at bar constitute a conflict of interest situation notwithstanding the fact that it did not involve multiple representation? We hold that it did. While multiple representation appears to account for the great majority of conflicts of interest which have been recognized by the courts, it is by no means the exclusive source. The core Sixth Amendment value which is threatened by a conflict of interest is the right to counsel who gives undivided loyalty to the client. *See, e.g., Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Anything which diverts an attorney's loyalty from the client can therefore be the source of a conflict of interest in the legal sense. *See, e.g., United States v. Hearst*, 466 F.Supp. 1068 (N.D. Cal.1978) (procurement of publication rights from client); *aff'd*, 638 F.2d 1190 (9th Cir.(1980)), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981); *see*

*also People v. Lawson*, 86 Ill.App.3d 376, 41 Ill.Dec. 401, 425, 407 N.E.2d 899, 923 (1980) ("To establish a per se conflict of interest, defendant must show that his attorney had a commitment to some other person *or cause* adverse to defendant's interest.") (emphasis added).

Did the case at bar constitute a conflict of interest situation notwithstanding the fact that it involved pretrial events rather than the trial of the case in court? We hold that it did. *See, e.g., Alvarez v. Wainwright*, 522 F.2d 100 (5th Cir.1975); *United States v. Truglio*, 493 F.2d 574 (4th Cir. 1974); *United States v. Carlson*, ACM 24356 (A.F.C.M.R. 20 Sep. 1984) ("An accused is entitled to be represented by effective counsel throughout the proceedings. *United States v. Jefferson*, 13 M.J. 1 (C.M. A.1982). This right obviously extends to the pretrial preparatory stage as well."); *Watson v. District Court*, 199 Colo. 76, 604 P.2d 1165 (1980).

Did the case at bar involve an "actual conflict of interest" in which Mr. Fiore "actively represented competing interests?" We hold that it did. Taken as a whole, Mr. Fiore's testimony shows that he was faced with more than a possible conflict. As he saw it, the situation required him to choose between obtaining an administrative discharge for appellant or having appellant continue to work for the government. This was an "actual conflict of interest." As a matter of objective fact, the government interest perceived by Mr. Fiori was adverse to appellant's interests at that point. Mr. Fiori resolved his dilemma by making a positive decision to pursue a particular course of action in order to favor the interests of the government while con-

---

**6.** While appellant might otherwise have attempted to argue that the right to counsel established by Article 27, UCMJ, 10 U.S.C. § 827, is not coextensive with the Sixth Amendment and that *Cuyler* and other precedents interpreting the Sixth Amendment are therefore irrelevant, *Breese* clearly scotches such an argument.

We should also note that *Cuyler's* reference to "a defendant who raised no objection at trial" is not relevant to the case at bar. In *Cuyler*, the Court inserted that condition in order to accommodate *Holloway v. Arkansas*, which granted

*per se* relief where the trial judge failed to investigate or otherwise respond to an appointed counsel's assertions that he was being forced to represent co-defendants whose interests were in conflict. 435 U.S. at 483–487, 98 S.Ct. at 1178–80. In the case at bar there was no failure to respond to a complaint of an ongoing conflict of interest during the pretrial events described above because there was no complaint at that time. In addition, the entire matter was investigated at trial where appellant was represented by conflict-free counsel.

tinuing to represent appellant. Thus Mr. Fiori "actively represent[ed] competing interests."

Did Mr. Fiore's actions adversely affect his representation of our appellant? We hold that they did. It was in appellant's interest to receive an administrative discharge in lieu of trial. We are satisfied from Mr. Fiore's testimony that if he had been considering only his client's welfare, he would have submitted the necessary request for discharge. Because of the conflict of interest, he did not.

It is by no means clear that a request for discharge would have been approved if it had been submitted in June.[7] That question would be all-important in determining adequacy of representation in a non-conflict situation, where appellant would have the burden of showing a "reasonable probability" of outcome-determinative prejudice. *See United States v. Davis*, 20 M.J. 1015 (A.C.M.R.1985). In the case at bar, however, that question is irrelevant, since, under *Cuyler* and *Strickland*, the findings we have made trigger a conclusive presumption that appellant was prejudiced.

### V

The next question is the extent of that prejudice and the relief to which appellant is entitled. Clearly appellant is entitled to relief in connection with his conviction of the 5 May offenses; Mr. Fiore's actions presumptively deprived appellant of an administrative discharge in lieu of trial for those offenses. Although we lack the power to administratively discharge appellant from the service, *United States v. Middleton*, 30 C.M.R. 54 (C.M.A.1960), we can

remedy the effects of Mr. Fiore's actions by reversing appellant's conviction of the 5 May offenses, dismissing those charges, and authorizing a sentence rehearing.

Appellant, however, claims that he is entitled to reversal and dismissal in connection with the 1 August charges as well. We disagree. Appellant's case in favor of relief from his conviction of the 1 August offenses ultimately resolves itself into the proposition that Mr. Fiori's failure to submit a timely discharge request somehow caused those offenses. This theory is manifestly invalid. Appellant is and was a responsible person, endowed with the ability to govern his conduct. The decision to commit the 1 August offenses was obviously his own,[8] and he alone is responsible for the consequences.

### VI

We have considered the remaining assignments of error and find them to be moot or without merit.[9]

The findings of guilty of Charges III and IV and the specifications thereof are set aside and those charges and specifications are dismissed. The remaining findings of guilty are affirmed. The sentence is set aside. A sentence rehearing may be ordered by the same or a different convening authority.

Judge FELDER and Judge NAUGHTON concur.

---

7. While Mr. Fiore testified that he believed that such a discharge would have been approved if requested in June, his opinion is insufficiently probative to permit us to conclude that that is in fact what would have happened. As noted above, we have no direct evidence on the question. The serious nature of appellant's 5 May offenses indicates that the division commander might well have decided that appellant should stand trial despite a contrary recommendation from the chief of military justice.

8. For the reasons argued in the government's brief, we reject appellant's claim of duress.

9. While appellant is, as he claims, entitled to administrative credit for pretrial confinement under *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984), the implementation of that decision is an administrative responsibility where there is no dispute over whether or how much pretrial confinement is involved. *Id.*