UNITED STATES, Appellee,

v.

Sergeant Major Billy R. HASTON, 450–62–3051, United States Army, Appellant.

CM 446165.

U.S. Army Court of Military Review.

24 Oct. 1985.

Appellant: Luther West, Esquire (argued); Lieutenant Colonel William P. Heaston, JAGC, Major Lawrence F. Klar, JAGC, Captain James E. Girvin, JAGC (on brief); Captain Robert W. Wiechering, JAGC.

For Appellee: Captain John F. Burnette, JAGC (argued); Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Major Byron J. Braun, JAGC (on brief).

Before RABY, CARMICHAEL, and ROBBLEE Appellate Military Judges.

OPINION OF THE COURT

RABY, Senior Judge.

Contrary to his plea, appellant was convicted of three specifications of lewd and lascivious acts with three females under the ages of sixteen, and of three similarly drafted specifications of indecently exposing himself on divers occasions to the same three females. He was sentenced to a dishonorable discharge, confinement at hard labor for 5 years, forfeiture of $596.00 pay per month for 60 months, and reduction to the lowest enlisted grade. The staff judge advocate recommended in his post-trial review that in view of the erroneous admission of two "summary court-martial convictions, adequate relief to the accused would be provided by reducing the period of confinement and period of forfeitures adjudged from five to three years." The convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement at hard labor for three years, forfeiture of $400.00 pay per month for three years, and reduction to the grade of Private E–1.

### I. *Adequacy of Counsel*

Appellant asserts that he was denied effective assistance of counsel. He maintains that: (1) the conduct of his trial defense counsel was of such a deficient nature as to fail entirely to subject the prosecution's case to a meaningful adversarial testing. This alleged failure resulted in a denial of appellant's Sixth Amendment rights, thus making the adversary process itself presumptively unreliable, and requiring no further showing of prejudice. Appellant asserts that counsel by his conduct in effect absented himself from a critical stage of the trial. *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Appellant argues that his position is established by the conduct of his counsel, Mr. Edward J. Bellen, who he asserts either "went to *sleep* during the trial, or at the very least, during a substantial portion of the trial ... closed his eyes, (and was hence unable to observe what was

going on in the courtroom around him)." *See, e.g., Javor v. United States,* 724 F.2d 831 (9th Cir.1984). Appellant argues, in the alternative, that: (2) the conduct of his trial defense counsel, under the totality of the circumstances, constituted actual ineffectiveness, and that the existence of prejudice is established by matters contained in the trial record. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, appellant asserts that defense counsel's ineffectiveness is established by, but not limited to: (a) his incompetence in failing to investigate the so-called "towel defense" before using it in the defense's case; (b) shutting his eyes, dozing or being inattentive during the direct examination of key government witnesses, and thus failing to observe matter adverse to appellant which occurred during the trial; (c) failing to object to the out-of-court refreshing of one young German girl's memory as to her prior testimony at the Article 32, Uniform Code of Military Justice [hereinafter referred to as UCMJ], investigation; and (d) by his erroneous introduction into evidence during the presentencing proceedings of records pertaining to appellant's military service which, through oversight, included evidence of two 20-year-old summary courts-martial.

Allegations that defense counsel and one or more court members had been sleeping during trial, and that discussions may have occurred between certain witnesses and between a court member and a witness, surfaced shortly after trial. These allegations were examined in depth in a post-trial *DuBay* hearing.[1] At this hearing, the military judge entered certain pertinent findings of fact. He found, *inter alia,* that (1) "there were no sleeping, dozing or inattentive (court) members at any time during the trial"; and, (2) "Mr. Bellen, the civilian defense counsel, was alert and attentive throughout the trial; he was neither sleeping nor dozing; any appearance of sleeping, dozing, inattentiveness or boredom on the part of the civilian defense counsel was

---

1. *See generally, United States v. DuBay,* 37 C.M.R. 411 (C.M.A.1967).

a trial tactic to divert the court's attention from opposing counsel or to reduce the impact of adverse government witnesses [sic] testimony";[2] (3) the conversation occurring between Command Sergeant Major (CSM) Day (a court member) and CSM Thomas (a potential witness), had no impact on CSM Thomas' subsequent testimony or on CSM Day's deliberations, and no prejudice was suffered by appellant due to the conversation; (4) Mr. Bellen did not bring this conversation to the attention of the military judge because he was satisfied it was harmless, if not favorable, to the accused; and (5) there was no credible evidence of any conversations during the case by witnesses about their testimony that materially or substantially could have affected the case.

Because appellant has not presented sufficient evidence to convince this court to set aside any of the military judge's findings of fact at the *DuBay* hearing, we expressly affirm *all* of those findings and adopt them as our own. *See generally*, Article 66(c), UCMJ; *cf. United States v. Stark*, 19 M.J. 519, 522 (A.C.M.R. 1984), *pet. granted*, 21 M.J. 84 (C.M.A.1985) (In clarification of certain controverted questions of fact, this court made express findings of fact pursuant to its statutory authority).

■ Considering the totality of circumstances in this case, we find that appellant was not denied, either actually or constructively, the presence of counsel at a critical stage of the prosecution, *i.e.*, counsel was not constructively absent during any critical stage of the trial. Further, we find that, based on the actual conduct of the trial, there was no breakdown in the adversarial process that would justify a presumption that appellant's conviction was insufficiently reliable to satisfy the requirements of the Constitution. *See, e.g., United States v. Cronic*, 104 S.Ct. 2039. Stated another way, we find no evidence that defense counsel "entirely fail[ed] to subject the prosecution's case to a meaningful adversarial testing," which would result in "a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable."[3] *See generally, United States v. Cronic*, 104 S.Ct. at 2047.

Because we have determined that Mr. Bellen neither was asleep nor inattentive during appellant's trial, we also find this case clearly is distinguishable from *Javor v. United States*, 724 F.2d 831.

■ A cornerstone principle in determining whether an accused was adequately represented by counsel depends upon whether, considering the totality of the circumstances, the counsel provided the accused with reasonably effective assistance of counsel throughout the trial. *Strickland v. Washington*, 104 S.Ct. at 2064–2065; *see McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). In a court-martial, an appellant enjoys the right to the effective assistance of counsel and is entitled to a "reasonably competent counsel who exercises that competence in his client's behalf throughout the trial." *United States v. Jefferson*, 13 M.J. 1, 5 (C.M.A. 1982); *United States v. Rivas*, 3 M.J. 282, 287 (C.M.A. 1977).

---

**2.** Government appellant counsel has called this court's attention to several places in the record of trial which show that new facts were testified to by prosecution witnesses on direct examination, and that later during cross-examination Mr. Bellen questioned the witnesses about these matters. Mr. Bellen could, of course, not have accomplished this feat if he had been sleeping at the time the new material was introduced.

**3.** We note that defense counsel had a definite trial strategy which he followed in presenting appellant's case to the court-martial. The court, at appellant's request, included both officer and enlisted members. Defense counsel vigorously cross-examined the government's witnesses—highlighting inconsistencies in their testimony; he presented an orchestrated defense designed to show that the government's witnesses were not trustworthy and that, due to a lack of opportunity and because of his good moral character, it was unlikely that his client committed the offenses charged. Further, Mr. Bellen presented a detailed argument on behalf of his client tailored to this trial strategy.

In cases involving actual ineffectiveness claims,[4] *Strickland* provides that:

First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness [and was thus deficient].... In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."

Second, "[c]onflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."

*Strickland v. Washington,* 104 S.Ct. at 2065, 2067.

The test for actual ineffectiveness of counsel [5] established by the United States Court of Military Appeals in *United States v. Jefferson,* when viewed *in toto,* is "congruent with the *Strickland* requirement of breach of professional competence coupled with a showing of a 'reasonable probability' of outcome-determinative prejudice." *United States v. Davis,* 20 M.J. 1015, 1018; *United States v. Kidwell,* 20 M.J. 1020, 1023–1024 (dictum); *cf. United States v. Jackson,* 18 M.J. 753, 755 (A.C.M.R. 1984) (*citing Strickland* with approval); *but compare United States v. Scott,* 18 M.J. 629, 632–633 (N.M.C.M.R. 1984) (Cassel, J., concurring) (which finds a difference between *Strickland* and *Jefferson* standards) *with United States v. Garcia,* 18 M.J. 716, 718–720 (A.F.C.M.R. 1984) (which by implication finds no inconsistencies between the *Strickland* and *Jefferson* standards) and *United States v. Garries,* 19 M.J. 845, 863–865 (A.F.C.M.R. 1985).

In determining whether counsel's assistance throughout the trial was reasonable under the existing circumstances, the following principles also apply: (1) appellate courts normally should not be quick to second-guess the strategic or tactical decisions of trial defense counsel, especially when the strategy used or tactics employed are not on their face unreasonable or unworkable, *see United States v. Jones,* 18 M.J. 713, 714 (A.C.M.R.1984), *citing United States v. Rivas,* 3 M.J. 282; (2) "[i]ssues of professional competency and adequacy or representation are not inextricably bound to trial results", *United States v. Jones,* 18 M.J. at 715; (3) "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result", *Strickland v. Washington,* 104 S.Ct. at 2064; (4) "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight", *id.* at 2065; (5) a presumption exists that counsel will fulfill the role in the adversary process that the Sixth Amendment envisions, *id;* (6) a "strong presumption" exists that "counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'" and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment", *id.* at 2066; and, (7) "[r]epresentation is an art, and an act or omission

---

**4.** This category of ineffectiveness claims excludes those claims involving "[a]ctual or constructive denial of the assistance of counsel altogether," as well as conflict of interest claims. These latter claims, which we have determined are not applicable here, are established by an accused meeting a different burden of proof. *See Strickland v. Washington,* 104 S.Ct. at 2067; *United States v. Davis,* 20 N.J. 1015, 1017–1018 (A.C.M.R.1985); *United States v. Kidwell,* 20 M.J. 1020, 1022–1023 (A.C.M.R.1985).

**5.** In *United States v. Jefferson,* 13 M.J. at 5, the court after carefully articulating appellant's right to effective assistance of counsel, as discussed in the above text, adopted the test of *United States v. DeCoster,* 624 F.2d 196 (D.C. Cir.), *cert. denied,* 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 311 (1979). This test requires that before an accused can prevail on the issue of ineffectiveness of counsel, he must demonstrate: (1) "serious incompetence" on the part of his attorney; and, (2) counsel's inadequacy affected the trial results.

that is unprofessional in one case may be sound or even brilliant in another", *id.* at 2067.

Applying the above legal tests and principles to the totality of the circumstances in this case, we find that appellant has not met his burden to establish that Mr. Bellen failed to provide him throughout his trial with effective assistance of counsel. Appellant has failed to demonstrate that Mr. Bellen, the civilian attorney who represented him at trial, provided him at any time during the trial with assistance which fell below an objective standard of reasonableness. Because the appellant has failed to establish any such deficiency in Mr. Bellen's performance, this assignment of error is without merit.[6]

### II. *Inadmissibility of Two Summary Court-Martial Convictions*

Appellant asserts that the military judge erred by failing to rule *sua sponte* that the evidence of the appellant's two prior summary court-martial convictions was inadmissible.

Appellant prepared two black binders filled with various documents pertaining to his military career. These binders, containing over one hundred and fifty pages, were offered in evidence during the presentencing proceedings by appellant's defense counsel. Apparently unknown to the appellant, his defense counsel, and the military judge, the fourth page of one of the admitted documents reflected appellant's two previous convictions by summary courts-martial, dated 22 September 1961 and October 1962, respectively. The convictions were for disrespectful language to a noncommissioned officer and for a one and one-half hour unauthorized absence, respectively.

---

**6.** We also find that appellant has affirmatively failed to establish that he suffered any prejudice, due to the "attorney performance" of Mr. Bellen, which affected the findings in his case.

**7.** Although a single error of omission by defense counsel may in some situation constitute ineffective assistance, *see Jackson v. State,* 37 Crim.L.Rep. (BNA) 2417 (Tex.Crim.App. Jul. 24, 1985), we find that this error, standing alone,

Before announcing sentence, the president of the court informed the military judge that a discrepancy had been discovered by the members. This colloquy is as follows:

PRES: [W]e have discovered a discrepancy from some of the personal data that I would like to bring to your attention, sir. On the DD Form 493, the Record of Previous Conviction indicates none.

MJ: That's correct.

PRES: In one of the black books there is a DD Form 398, Statement of Personal History, that indicates a couple of summary courts-martial.

MJ: All Right. Thank you for bringing that to my attention.

PRES: *We have no idea whether that has any bearing or not.*

(Emphasis supplied).

Subsequently, the assistant trial counsel requested a sidebar conference to discuss the problem, at which time the following verbal exchange occurred:

MJ: I would also note that this is a defense document. And for that reason, I believe nothing is appropriate to be done about it at this time. Any comments, Mr. Bellen?

IDC: No, sir.

Thereafter the sentence worksheet was returned to the president who forthwith announced sentence.

■■■ The presentation of the evidence of the two summary court-martial convictions is a classic case of an error induced by the defense.[7] The staff judge advocate was clearly concerned about this error. In fact, he made the following pertinent conclusions in his well-tailored post-trial review to the convening authority:[8]

does not rise to such a level. Moreover, as we have concluded in Section I, *supra,* neither does this error rise to such a level when considered in light of the totality of the circumstances attendant to this case.

**8.** The staff judge advocate's discussion was quite thorough and was almost three type written pages in length.

There is some possibility the two prior summary courts-martial might have influenced the decision of the court as to the period of confinement and/or period of forfeiture [sic] adjudged. Balancing the seriousness of the offenses and the accused's perjury at his trial against his previous excellent record and the erroneous admission of the summary court-martial convictions, adequate relief to the accused would be provided by reducing the period of confinement and the period of forfeitures from five years to three years.

We find that the convening authority followed this sound advice by his staff judge advocate. In fact, after considering the entire record, he approved only so much of the adjudged sentence as provided for a dishonorable discharge, confinement at hard labor for three years, forfeiture of $400.00 pay per month for three years, and reduction to the grade of Private E-1.

We initially note that the nature of the offenses for which appellant received summary courts-martial do not appear to constitute major offenses *per se;* that the summary court-martial convictions were over 20 years old; that the 1962 amendments to Article 15, UCMJ, (which substantially increased a commander's nonjudicial punishment authority) were not yet in effect when appellant was subjected to the summary courts-martial; and, that prior to announcing sentence in this case, the president expressed the court's confusion as to the legal effect of these prior convictions. Considering also that appellant was at the time of trial a Sergeant Major (E-9), we find that the court attributed no significant weight to the entries in appellant's personnel records that reflected these old convictions. Nevertheless, *ex abundanti cautela,* we will resolve this question in favor of appellant by assuming that the court members gave this information some weight in their deliberation on sentence.

▇ We further find that the action of the convening authority in this case constituted a substantial and meaningful reduction of appellant's adjudged sentence and, thus, rendered harmless any error caused by the defense counsel's introduction of the offending record into evidence.

Our inquiry into this matter normally would now be ended; however, appellant maintains that the military judge's failure to rule *sua sponte* that the evidence of appellant's prior convictions was inadmissible created a separate error warranting sentence rehearing.

We note that Mr. Bellen expressly declined to comment upon the military judge's conclusion that no further action on the judge's part was appropriate after the court president called the judge's attention to this error. We are mindful of the doctrine of defense-induced error. *See generally, United States v. Catt,* 1 M.J. 41, 47 (C.M.A.1975), and cases cited therein. However, considering the posture of the case at bar, and the necessity for ensuring that appellant received a fundamentally fair presentencing proceeding, we decline to apply the doctrine of defense-induced error in this instance.

▇ We find as a fact that the president of the court was actively seeking the legal guidance of the military judge when he called the judge's attention to the adverse entries in the defense's exhibit. It has long been recognized that a trial judge must tailor his instructions on sentencing to both the law and the evidence. *See United States v. Slaton,* 6 M.J. 254 (C.M.A. 1979), and cases cited therein; *United States v. Rick,* 9 M.J. 776 (A.F.C.M.R.1980). Moreover, "court members must be instructed concerning reconsideration when ... *there is some indication that reconsideration is desired by a court member."* *United States v. Cross,* 2 M.J. 1057, 1061 (A.C.M.R.1976), *pet. denied sub nom. United States v. Sepulveda,* 3 M.J. 108 (C.M.A.1977) (emphasis supplied). Even in a case where the military judge initiates reconsideration, "the military judge has the responsibility to insure that the reconsideration is conducted in accordance with adequate legal guidelines. If the members seem uncertain about their authority or the options available to them, he must provide

additional guidance." *United States v. King*, 13 M.J. 838, 841 (A.C.M.R.1982), *pet. denied*, 14 M.J. 232 (C.M.A.1982).

In this instance, it should have been clear to the military judge that the court members were requesting additional legal guidance regarding the evidence pertaining to appellant's summary court-martial convictions. Had the members promptly been advised before sentence was announced that these documents were inadmissible, they well may have indicated their desire to reconsider their sentence to appellant's benefit, or to make statements which would have prompted the military judge to initiate such a reconsideration action.

 We will not speculate either as to the court members' or to the judge's conduct in such circumstances; rather we will resolve this matter in appellant's favor by holding that the military judge, under the facts of this case, erred in failing to inform the court members that the evidence of the two summary courts-martial was inadmissible.

Testing this error for prejudice, we are convinced that no fair risk exists that appellant was prejudiced. *See* Article 59*a*, UCMJ; *cf. United States v. Cobb*, 7 M.J. 696 (N.C.M.R.1979) (error in the failure to instruct, however, must be tested for prejudice). Assuming, *arguendo*, that the court members did attach some degree of significance to these two old summary court-martial convictions, we find that the action of the convening authority in substantially reducing both the period of confinement and the amount and period of adjudged forfeitures totally negated any fair risk of prejudice to the accused.[9] *See United States v. Bashaw*, 6 M.J. 179 (C.M.A.1979).

Accordingly, we find this assignment of error to be without merit.

### III. *Refreshed Testimony*

Appellant alleges that the military judge erred by allowing the trial counsel to refresh the testimony of one of the young girls victimized, Manuela Zimmerman, outside the presence of the court members. We disagree.

Manuela Zimmerman, was eleven years old at the time of trial. She spoke very little English and testified through an interpreter.[10] On direct examination, Manuela stated that she did not remember specific facts about what had occurred. She could not remember how many times she had visited appellant's apartment nor could she recall how many times she had touched him. Trial counsel then, at a sidebar conference, asked the military judge to be allowed to refresh Manuela's recollection by the use of her Article 32, UCMJ, testimony. The military judge granted the request, and the trial counsel was allowed to refresh Manuela's recollection with the German translation of her Article 32, UCMJ, testimony in the trial counsel's office during the lunch recess. Appellant's civilian defense counsel, Mr. Bellen, who was invited to attend the session but declined, stated that he had no objection to the procedure. After the lunch recess, Manuela continued to be questioned on direct examination. On cross-examination, Mr. Bellen extensively questioned Manuela, not only about her answers on direct examination but also about her testimony at the Article 32, UCMJ, hearing.

Appellant maintains that the procedure utilized by the military judge failed to follow the dictates of Mil.R.Evid. 612. The Rule provides:

> such an evaluation and balance it against the nature of the error under consideration, it becomes clear to us that we have properly resolved this issue.

**9.** Appellant urges that the corrective action taken by the convening authority in response to the recommendations contained in the staff judge advocate's post-trial review should be considered as correcting only the defense counsel's error in initially offering the adverse evidence to the court. We decline to take such a stenotic approach; rather, we choose to evaluate realistically the effect that the convening authority's action had upon appellant. When we make

**10.** The military judge instructed the members that even if they understood German they were not to listen to Manuela's German, but instead to rely on the interpreter.

If a witness uses a writing to refresh his or her memory for the purpose of testifying, either

(1) while testifying or

(2) before testifying, if the military judge determines it is necessary in the interests of justice,

an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

Mil.R.Evid. 612.

■ Appellant maintains that the procedure is to be accomplished while the witness is on the stand and in the presence of the court members. However, we do not believe that the military judge abused his discretion in allowing the trial counsel to refresh Manuela's memory during the lunch recess.

■ The military judge is given enormous discretion under Mil.R.Evid. 403 to exclude evidence on the ground that its admission would do more harm to appellant than good. The judge had already instructed the members to disregard Manuela's German testimony. Having given such an instruction, one which we believe was appropriate under the circumstances, was the judge then to allow the members to hear the trial counsel read Manuela's testimony from the Article 32, UCMJ, hearing;[11] to hear the interpreter translate it into German; to hear the trial counsel ask Manuela if she recalled testifying to that effect; to hear the interpreter translate that statement into German; to hear Manuela respond and then to have the interpreter translate her response into English? We think not. Such a situation is the very sort of situation that Mil.R.Evid. 403 covers. Such a convoluted scenario would do those things the Rule is trying to prevent: confuse the issues, mislead the members,

cause undue delay, and waste time. *See United States v. Ratliff,* 623 F.2d 1293, 1297 n. 8 (8th Cir.1980). Accordingly, we conclude that the military judge properly allowed Manuela's testimony to be refreshed outside the presence of the members.

The "fears concerning the 'planting' of ideas with a witness increase the more a witness is focusing on the testimony to be given at trial, [and t]his is more likely to be the case when memory is refreshed immediately before or during the recess of a trial." S. Saltzburg, L. Schinasi, & D. Schlueter, *Military Rules of Evidence Manual* 310 (1981). However, Mil.R.Evid. 612 allows the adverse party to see the document that the witness used to refresh his or her memory, cross-examine the witness thereon and introduce into evidence those portions which relate to the testimony of the witness. By focusing on those portions of the document that relate to the witness' testimony, the adverse party may effectively impeach the witness. *See* S. Saltzburg, L. Schinasi, & D. Schlueter, *Military Rules of Evidence Manual* 308 (1981). By cross-examination based on the document, the adverse party may detect circumstances not appearing on the surface and expose all that detracts from the weight of the testimony. 3 Wigmore § 762 (Chadbourn rev. ed. 1970).

In most instances, when a witness' memory is to be refreshed on the stand, a writing will be handed to the witness who reads it and then gives it back to questioner.[12] The purpose of refreshing is to awaken, or jog, the memory of the witness and "thereby to increase the evidence available to the trier of fact." S. Saltzburg, & K. Redden, *Federal Rules of Evidence Manual* 416 (3d ed. 1982). *See also People v. Thomas,* 359 Mich. 251, 102 N.W.2d 475 (1960). In a case where the witness reads the document, its content does not go to

11. Normally, a witness' Article 32, UCMJ, testimony is not presented to the members.

12. In the case *sub judice,* the trial counsel had only the English translation of Manuela's Article 32, UCMJ, testimony which would have been of no use to Manuela, since she did not read English, in refreshing her memory.

the trier of fact unless the adverse party chooses to introduce in evidence those portions of the writing relating to the testimony of the witness. Mil.R.Evid. 612. In cases where the witness is unable to read the document, the members withdraw from the courtroom and the statement is read to the witness, as when the witness is blind or illiterate.[13] *See People v. Jones*, 1 Mich. App. 633, 137 N.W.2d 748 (1965); *People v. Thomas*, 102 N.W.2d 475, and cases cited therein. When a tape recording, rather than a written statement, is involved, judges have allowed the witness only to listen to the statement through earphones, or they have excused the jury and only the accused, counsel, and the judge hear the statement. *See Slatinsky v. Bailey*, 330 F.2d 136 (8th Cir.1964); *United States v. McKeever*, 271 F.2d 669 (2nd Cir.1959); and *Breeding v. Reed*, 253 Iowa 129, 110 N.W.2d 552 (1961). After the witness' memory has been refreshed, direct or cross-examination continues in the presence of the members. In view of the above, we find that the military judge was free to construe Mil.R.Evid. 612 as authorizing the procedure he employed. Mil.R.Evid. 102.

Although we think the better practice would have been for the military judge to have had an Article 39(a), UCMJ, session with the accused, counsel for both sides and the court reporter present, we will not substitute our preferences for those of the military judge. We find, in this instance, there was no prejudice to appellant by the

procedure used.[14] Accordingly, appellant's assignment of error is without merit.

## IV. *Multiplicity*

Appellant asserts that Specifications 4, 5, and 6 (indecent exposure) are multiplicious for findings purposes with Specifications 1, 2 and 3 (lewd and lascivious acts), respectively, of the Charge.

■ In the interest of judicial economy we will take appropriate consolidation action.

Specifications 1 and 4 of the Charge are consolidated by inserting after the words "his wife," and before the words, "by having" in Specification 1, the words "by willfully and wrongfully exposing his penis in an indecent manner in the presence of Manuela Zimmerman and". Specification 2 and 5 of the Charge are consolidated by inserting after the words "his wife," and before the words, "by having" in Specification 2, the words "by willfully and wrongfully exposing his penis in an indecent manner in the presence of Anja Buchmann and". Specifications 3 and 6 of the Charge are consolidated by inserting after the words "his wife," and before the words, "by having" in Specification 3, the words "by willfully and wrongfully exposing his penis in an indecent manner in the presence of Nicola Brenda, also known as Fischer, and". The findings of guilty of Specifications 4, 5, and 6 of the Charge are set aside and those specifications are dismissed.[15]

13. We note that the trial counsel had only the English translation of Manuela's Article 32, UCMJ, testimony present in the courtroom. Manuela was only eleven years old at the time of trial. She could understand very little English; she certainly could not read it. The English statement alone was of no use to her. By analogy, Manuela was effectively illiterate; consequently, refreshing her testimony out of the presence of the members was proper.

14. We note that appellant's civilian defense counsel, Mr. Bellen, questioned Manuela extensively and effectively when she returned to the stand to testify following the out-of-court refreshing of her recollection. Counsel, in fact, highlighted the differences between her testimony on direct examination and her testimony at the Article 32, UCMJ, hearing. Counsel pointed out discrepancies in Manuela's testimony con-

cerning which days she had visited appellant. On direct, she said she only saw him on weekends. On cross-examination, initially she said that she had told the Article 32, UCMJ, officer that she only saw appellant on weekends. Mr. Bellen questioned her further and Manuela admitted that she had also seen appellant during the week. Mr. Bellen also pointed out that Manuela's answers were different in the morning than they were in the afternoon. Moreover, in his closing argument, Mr. Bellen reminded the members that Manuela's memory had been refreshed and again highlighted the discrepancies in her testimony.

15. Because we find as fact that appellant is guilty of Specifications 4, 5, and 6, these specifications can be revived in the discretion of higher appellate authority in accordance with the

The findings of guilty of the Charge and of Specifications 1, 2, and 3 thereof, as amended, are affirmed.

Reassessing the sentence on the basis of the entire record, this Court affirms the sentence.

Judge CARMICHAEL and Judge ROB-BLEE concur.

conditions set forth in *United States v. Williamson,* 19 M.J. 617 (A.C.M.R.1984), *pet. denied,* 21